Good morning, Your Honor. May it please the Court. If I may apportion my time for my opening arguments, seven minutes and three minutes. I'll help you. Thank you, Your Honor. And I must say, Judge Alarcon, it's been many years since we've seen each other. It's good to see you again. The importance of unbiased evidence gathering in the pre-prosecution process. Could you introduce yourself for the record? Yes, Your Honor. I beg your pardon. Charles Carrion, appearing for Plaintiff Appellant, Gary Arden. Thank you. Thank you, Your Honor. As I was saying, the importance of unbiased evidence gathering is essential to the pre-prosecution process. The police officer is essentially what I would call a street magistrate who is doing the initial collection of evidence. And it's fundamentally unfair to the criminally accused for that street magistrate to fabricate evidence. And it is also damaging to the entire prosecutorial process for the police officer to withhold evidence in response to a timely request from the defense for what would be exculpatory material, in this case, San Francisco PDK. The problem with the evidence was something to do with the software that was needed in San Mateo's. Yes, Your Honor. And the detective testified that he didn't realize there was specialized software. So how can we conclude from that that it was Detective Castell who was dragging his feet on producing discovery? Oh, well, that is why I included the information, the case materials, the discovery material that I obtained from the San Mateo District Attorney's Office with respect to the Choma prosecution, which was a legitimate prosecution. Was that the case before involving the three employees? Exactly, Your Honor. Who embezzled a great deal of money. And on that occasion, Detective Castell did a great investigation. The problem was that you weren't given the software. Is that it? Or they just didn't provide you with the disks at all? It was sort of a phased continuing problem. I did receive a disk after, I believe after I filed a motion. I received a disk. It did not have the Endura software. When Detective Castell sent the Choma discovery, he sent it along with his response to a discovery request very promptly, within two weeks, and it apparently included the Endura software because there was no further discussion with defense counsel attempting to get that. Clearly, if they got that. So I guess other than the bare fact of delay, now that we know that there is a computer issue attending to it, what evidence did you offer to the district court to prove that that was done deliberately by Detective Castell? That the primary evidence was, first of all, that the Chuma case establishes a baseline for his competence. Second, the testimony of his buddy, the San Francisco police officer, who actually burns CDs for him. Well, it's their system, right? This is an unusual situation because the airport's in San Mateo County, and we've got both San Mateo County sheriffs, deputies, and San Francisco police officers providing security. They have one of those compacts, so they share all their evidence. Right. But the equipment actually belongs to San Francisco, not to San Mateo County. And the custodian, if you will, of the video equipment is a San Francisco police officer, not Detective Castell. Detective Castell has it on his computer, and he uses it to view videos any time he wants. I thought his testimony was that he routed that request to the, I'll call him the evidence officer, who was the San Francisco police officer, in order to comply with your discovery request. He spoke with SFPD Hill, testified that Mr. Detective Castell had been using the EnduraPlayer software on his own computer since 2005. Yes, but that doesn't mean that you have it on your computer. Castell has it. He says he put it on Castell's computer. Maybe you and I are talking past one another. I thought you said you needed the software on your computer in your law office in order, when you first got the disc, because it wouldn't play. Yeah. Correct. Okay. So I'm still having a hard time understanding what the contested issue of material fact is, from which we should conclude that there's a legitimate dispute over. I mean, is this the best argument? That's what I'm thinking. I mean, we're burning up a lot of your time on it. Exactly. Exactly. If I could turn to another issue, and then I would like to talk about the dispute, the evidence of a falsified police report. But before I even ask you about that, I had a question. Even if there was a constitutional violation, so I'll call it a Castanich violation rather than a Devereux violation, because this seems very different from Devereux, there still has to be prejudice to the complaining party. And there was evidence in the record undisputed that Davis said, I've seen in this jarred pocket money, and there is evidence that the boss, the manager, reported that to the police. And then they viewed, whatever they viewed, they saw things. The video didn't disprove that he was pocketing money. May I ask, who saw the video? I saw the video. The video doesn't disprove what the police reported. There's some discrepancy. It's ambiguous. Let's just say for purposes of arguments, it's ambiguous or inconclusive. And so the question would be, was there sufficient evidence to prosecute Arden, Mr. Arden, regardless of what discrepancies were in the police report so that there wasn't any prejudice. So that was one question that came to mind when I read the various claims. Can you address that? Oh, yes, Your Honor. I personally feel that the imputation of entirely false statements to Mr. Romeo Fernando, the sky cap, is the most egregious. But even putting that out, what I was asking was, we have the testimony from Davis, and he never backed up on that. Mr. Fernando said, no, I'm scared. I'll take this back. I'll recant. But Davis never recanted. And so with that, plus the observations of the police officers, would that have been enough to prosecute regardless? I do not believe that this court, nor the court below, could properly determine that on summary judgment. I do believe that is an issue of trial for fact. You wanted to save three minutes, and you've got two and a half left. I'll resume, Your Honor. So we just talked about Mr. Fernando. And on de novo review, this court views the issue from its own perspective, and I do believe that the light from the video that sheds upon it, I take it that my perception as plaintiff's counsel in this case, is that that video is more exculpatory and less ambiguous. But I find Detective Castell's attempt to conform his declaration to the video, once he has seen it, to be quite illuminating. Because while he testified at the October 16th suppression hearing that he saw Mr. Arden pocket money six times, and he recorded on page four of Castell's report that he saw it happen four times, and at the suppression hearing and in the report, he stated that he saw Mr. Arden use a round key, which interestingly enough, was not among the items that were seized into evidence. Maybe this does give force to your argument that a jury's going to have to sort all this out. That's all good impeachment material, but you're overlooking facts like the $109 in small bills in his pocket when the officers interview him, right after they observe him doing whatever he was doing at the smart cart machine. And his explanation is, I stopped at a cash machine on the way to the airport and I didn't buy anything, but he doesn't have any $20 bills in his pocket. What have we got here? We have got strong corroborating evidence that he's taken money from people buying smart carts and sticking it in his left front pocket, like the witnesses told him, told Mrs. Suryuchenko before she called Detective Castell. Well, Your Honor, I don't think that any negative implication in the absence of somebody having some dope along with them, that the money is in fact the proceeds of crime, is warranted. Well, but the carts are sold for $4 a piece and he had 14 $1 bills and a bunch of $5 bills, but no $20 bills, Ms. Garan. Your Honor, the conflict here is... That is a very inconvenient fact for Ms. Garan. And one that the jury will undoubtedly prefer in their minds. But do we have a defense? Excuse me, Your Honor. Whether there's a genuine issue as to probable cause, I think is a... Well, I think the issue here is whether Detective Castell's assertion about what Mr. Arden said, which Mr. Arden has denied saying or making any statements whatsoever about the ATM money. Well, I assume that Detective Corkery's partner is going to be available to testify that that's what he said. There you go. Corkery is supposedly the guy who interviewed the four witnesses, except that Castell testified on October 16th under oath in open court that he interviewed the disappearing witnesses. So how is Corkery going to help? I think we understand your position. You've used up all your time. Let's hear from Mr. Levy. May it please the Court, David Levy appearing on behalf of the Respondent. I think by the tenor of some of the Court's questions that you do correctly evaluate the significance of the video and how it corroborates not only the police report and the testimony of Detective Castell, but frankly, Romeo Serdiochenko, Davis, and everyone else. You've got some big problems in this case, though, Mr. Levy. You've got witnesses who, if we credit what Detective Castell said in his report, basically went sideways on him in their deposition. Now, apparently the magistrate judge thought it was because Mr. Fernandez was scared and he'd been named as a defendant in the lawsuit. But he certainly does appear to retract statements that he made to the detective that are pretty important to the issues here. I agree with you that it is not helpful. I don't think it is salient, Your Honor. Because Fernandez only reported what he saw on February 2nd. He reported that to Davis, who in turn reported it to Serdiochenko, who then the following morning on the 3rd reported it to Detective Castell. Didn't the detective briefly speak with Fernandez during the surveillance? Because he saw him there? He did. And he retracted that statement, too. Fernandez retracted that statement, although, as the district court correctly observed, as did all of us who attended the deposition, he would say, no, I didn't say that. But, you know, I really don't want to get involved. And I really don't want to have anything to do with this. We've seen, this is not the first time at the rodeo for witnesses who have retracted their statements. But the question is, in the face of that fact, the retraction from a key non-police witness on whom the officer was relying in part for probable cause, could the magistrate properly grant summary judgment? Or are we going to just have to let a jury decide whether or not Mr. Fernandez changed his story because he was scared? It was correct for the magistrate judge because it was simply a statement made by Fernandez to Davis. Again, I agree that Fernandez denies having said any of that and denies saying that to Detective Castell. However, it started the process of motion for Davis to then speak to Sertiochenko. And when she spoke to Castell, he started his investigation. He did not base his investigation on what Fernandez had said. So, opposing counsel says there is not enough evidence. So, my question was, even if there was a constitutional violation of Mr. Arden's rights, was there prejudice? Which would be, is there a genuine issue of material fact that there was probable cause to prosecute taking out the disputed statements? And so, what we're left with, I think, is Davis' statement and the, I can't say her name, the manager's statement and the ambiguous video. And I guess the $109 that was found in the pocket. Is there enough that you would say that there is not a genuine issue of material fact that there was probable cause to prosecute him? Yes. The mere fact that the defendant denies having stolen the money doesn't necessarily mean there is inadequate probable cause. If you take all the facts together, not only the video, which I actually think it is unambiguous in the sense that when you take into account the declaration of Needham, who was the district manager, and the statements of Serdyukchenko, it was clear that Mr. Arden wasn't supposed to be hanging around this one unit. His responsibility was to be throughout the entire airport. And so, over a two-hour period, he should have been there a minute or so. Instead, he is there two hours. He is likely aware of the camera behind him. That's speculative. I admit that. Which would explain why he hung his jacket over the back of the machine covering the key. Exactly. And why the camera shows him from the back and so you can't exactly see what he is doing with his hands in front. But you can definitely see that he is there for two hours. He is taking money from customers or potential customers, putting it in his pocket. Sometimes you can't see George Washington's face on the bills, but you can see him getting something from the folks, putting it in his left pants pocket. And then remembering also that Detective Castell and Corkery are watching this from a perpendicular angle behind what I'll call smoke glass. So, Arden doesn't realize he is being observed, but the two detectives can see very clearly what is going on, even if the camera can't catch it. But they could clearly be impeached. I mean, the police report suggests, in comparison to other evidence, suggests an exaggeration. So Davis says, I told him one time and Castell says four or five times that he was stealing. And then the, who interviewed the witnesses? I mean, there's lots of discrepancies between the police report. I mean, they're not necessarily material discrepancies, but there's definitely discrepancies, right? Do you disagree with that? I don't disagree that there's some minor discrepancies. I think Corkery and Castell may well have spoken to witnesses, but because Corkery did not do a separate report, we only have his declaration. But I agree that there are some discrepancies. At one point, in fact, in the report, the detective misstates the amount of money he had. You know, he added up the bills wrongly. But then later the evidence log shows that it adds up to 109. So there are minor discrepancies, but the overwhelming evidence is that there was probable cause to arrest. He actually was not arrested, but the district court did find for our purposes that, you know, all attendance in favor of the plaintiff appellant, that there was an arrest. There's probable cause. Can you tick off for us, without regard to disputes between the witnesses' testimony, what material facts are not in genuine dispute that would still establish probable cause and would not require a jury determination as to who's telling the truth?  It was not proper for him to be at that location for two hours. I appreciate that's not a crime, but it's strongly corroborative. He had $109 in small, crumpled up bills stuffed in his pocket. The when he is asked about the money, at one point he said, no, I didn't take any. And then he said, well, I took some, one point, but I went to the ATM and got cash. Well, as the court pointed out, that doesn't make any sense. It's damning. All of that, some of the actions that are described in the video, I refer to Needham Declaration where he does describe it as being, you know, while you and I may just be all of that in combination shows that this fellow was doing, getting cash from his employer, embezzling. And I guess you could also add the initial call from the reporting person who reported what Mr. Davis had told her that he had observed. Exactly. But I think it's important that Detective Castell didn't take that information, walk down to the sidewalk. It's like a tip from an untested informant. But then he goes to the scene, he does the stakeout, and he corroborates information. I mean, it's the left pocket that Mr. Arden is putting his money into, which is what all the witnesses said, assuming that that's what they said. All right. Anything else? And then how about the testimony from Davis? Was that disputed? I thought that his statement that he saw Arden sell a cart and pocket money was undisputed that he made that testimony. Or is there a question about that as well? I think he was asked at one point how many people he saw. Now we're kind of testing my recollection on that, and I apologize. He was asked how many people, and I think he said a couple or he said a lady in a pink dress or a red dress, and then shown the video from February 2nd, and he couldn't spot that. But he very clearly did testify that. Now I'm giving my deposition two years or so after the fact, but I can tell you that when I spoke to Detective Castell in February of 2011, I told him what I had observed. I told him the truth. Okay. I think that's all we have. Thank you. Thank you. The case just argued is submitted.
judges: Alarcon, Tallman, Ikuta